THIS OPINION HAS
 NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT
 IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE
 STATE OF SOUTH CAROLINA
In
 The Court of Appeals

 
 
 
 Mary
 W. Adams, Appellant,
 v.
 Westinghouse
 SRS and 
 Wausau
 Insurance Companies, Respondents.
 
 
 

Appeal
 From Aiken County
 Diane
 Schafer Goodstein, Circuit Court Judge
Unpublished
 Opinion No.   2009-UP-401
Heard
 May 13, 2009  Filed August 10, 2009
REVERSED
 AND REMANDED

 
 
 
 Amy G. Steinmeyer, of Columbia, and Michael  Tanner, of Bamberg,
 for Appellant.
 Matthew  Cook, of Columbia, for Respondents.
 
 
 

GEATHERS,
 J.:  In
 this workers' compensation case, Appellant Mary Adams seeks review of the
 circuit court's conclusion that her claim, filed over twenty-three years after her
 injury, was barred by the statute of limitations, S.C. Code Ann. § 42-15-40 (Supp.
 2008).  Adams argues that Respondents Westinghouse SRS and Wausau Insurance
 Companies waived their right to assert any affirmative defenses to her claim,
 including the statute of limitations, because they failed to timely respond to
 her claim.  Despite the obvious disadvantages of allowing this extraordinarily
 stale claim to proceed forward, we reach the inescapable conclusion that
 Respondents' statute of limitations defense is procedurally barred.  Therefore,
 we must reverse the circuit court's order and remand the matter to the
 Commission. 
FACTS/PROCEDURAL
 HISTORY
On July 7, 1977, Adams injured her neck and back when she was pinned in a machine while working for
 Westinghouse SRS.  Her first attempt to notify the Workers' Compensation
 Commission of a claim was when she filed a Form 50 on December 14, 2000, over twenty-three years after her injury.  Other than a failed attempt to retain
 an attorney in April 2002, there is nothing in the record to show the
 subsequent history of this filing.  On August 23, 2004, Adams filed a second Form 50.  
On September 3, 2004, the Commission mailed the Form 50 to Wausau at its Maitland, Florida office.  Respondents
 filed their Form 51 Answer to Adams' claim on October 12, 2004.  They asserted numerous defenses, including the statute of limitations and the doctrine of
 laches.  The single commissioner conducted a hearing on the claim on January
 20, 2005, and filed an order denying the claim on March 15, 2005.  The single commissioner concluded that Adams' claim was barred under section 42-15-40
 because she did not timely file her claim.[1] 
 The single commissioner also concluded that Adams' claim was barred by the
 doctrine of laches.  
The Appellate Panel reversed the
 single commissioner's order on the ground that Respondents failed to file their
 Form 51 within the thirty-day deadline set forth in 25A S.C. Code
 Ann. Regs. 67-603.B(1) (Supp. 2008).  Regulation 67-603.B(1) requires the
 employer's attorney to file the Form 51 with the Commission's
 Judicial Department within thirty days of service of the Form 50.  The Commission
 concluded that because Respondents failed to timely file their response to Adams' claim, they waived their affirmative defenses pursuant to 25A S.C. Code Ann. Regs.
 67-603.C (Supp. 2008).[2] 
 The Commission also concluded that even if Respondents did not forfeit their
 right to raise the defense of laches, they did not provide any admissible
 evidence of any of the elements of laches, such as prejudice.  
The circuit court reversed the
 Appellate Panel's order and reinstated the single commissioner's order.  The
 circuit court concluded that Respondents' Form 51 was not due for filing until October 12, 2004, the same day Respondents filed their Form 51.  The circuit court
 explained that Respondents could take advantage of Rule 6(e), SCRCP, which
 allows an addition of five days to a response deadline when a party has been served
 with a notice or paper by mail.[3] 
 The circuit court calculated the due date for the Form 51 by tacking on an
 additional five days at the end of the thirty-day period and by further
 extending the period to account for weekend days both before and after adding the five days.  The circuit court stated,

 A
 letter was sent out dated September 3, 2004 that achieved proper service. 
 Under 67-209 [sic], the [thirty-day] period in which the respondent must
 respond would then commence on the next day, September 4, 2004.  See S.C. Code Regs. 67-209(A) (2006).  When counting these days, '[t]he day of
 the event, after which a designated period of time begins, is excluded.'  Id.  Therefore, an answer was due by the end of a [thirty-day] period that began to
 run on September 4.  This period expired on October 3, which in 2004 fell on a
 Sunday.  When determining the length of an answer term, weekend days and
 holidays are included 'unless the designated time period ends on a
 Saturday, Sunday, State or Federal holiday.'  S.C. Code Regs.
 67-209(B) (emphasis added).  In those types of cases, the final day the answer
 is due is 'the next day that is not a Saturday, Sunday, State or Federal
 holiday.'  Id.  In 2004, the next non-weekend or non-holiday date to
 follow October 3 would have been Monday October 4, 2004.  Under 67-209 [sic], the [thirty-day] period extended to that date.  
 The period would then
 extend again under Rule 6 of the South Carolina Rules of Procedure.
 .
 . .
 South
 Carolina rule of Civil Procedure 6(e) allows a 'grace period' of five days
 beyond the normal due date of any action in response to something served
 via U.S. Mail[.] 
 .
 . . 
 In
 the present case, after applying South Carolina Code of Regulations 67-209, the
 [thirty-day] term available for an answer ended on October 4, 2004.  Because the service required an answer, however,
 an additional five (5) days can be
 added beyond this date.  That places the expiration on the ninth day of
 October, which in 2004 fell on a Saturday.
 With
 the new expiration date of October 9, 2004 occurring on a weekend, Section
 67-209(B) again applies to extend the due date to Tuesday, October 12.  In
 2004 October 10 fell on a Sunday and October 11 was a federal holidayColumbus Day. 
 Therefore, the expiration date had to extend to the first non-weekend or
 non-holiday date:  October 12, 2004.

(emphasis added).
The circuit court concluded that
 Respondents timely filed their Form 51 and that they did not waive their
 affirmative defenses.  The circuit court declined to rule on the issue of
 laches but concluded that Adams' claim was barred by the statute of
 limitations.  This
 appeal followed.
ISSUES ON APPEAL 

 
 
 1.
 Did the circuit court err in concluding that 
 Respondents timely filed their Form 51 because Rule 6(e), SCRCP, allowed them a five-day  grace period?
 
 
 
 2.
 Did the circuit court err in concluding that 
 Respondents did not waive their affirmative defenses?
 
 

STANDARD
 OF REVIEW
The South Carolina Administrative Procedures Act
 establishes the standard for judicial review of decisions by the Appellate
 Panel of the Workers' Compensation Commission.  See Lark v.
 Bi-Lo, Inc., 276 S.C. 130, 134-35, 276 S.E.2d 304, 306 (1981). 
 Specifically, section 1-23-380 of the South Carolina Code (Supp. 2008) provides
 that this court may not substitute its judgment for that of the Appellate Panel
 as to the weight of the evidence on questions of fact, but may reverse when the
 decision is affected by an error of law.  See 
Hamilton v. Bob Bennett Ford, 336 S.C. 72, 76, 518 S.E.2d 599, 600-01 (Ct. App. 1999) (interpreting section 1-23-380), modified on
 other grounds, 339 S.C. 68, 528 S.E.2d 667 (2000). 
 Section 1-23-380 allows reversal of a factual finding of the Appellate Panel
 only if it is "clearly erroneous in view of the reliable, probative, and
 substantial evidence on the whole record."
In reviewing workers' compensation
 decisions, we ascertain the propriety of the circuit court's determination as
 to whether the Appellate Panel's findings of fact are supported by substantial
 evidence in the record and whether the Panel's decision is affected by an error
 of law.  Baxter v. Martin Bros., Inc., 368 S.C. 510, 513, 630
 S.E.2d 42, 43 (2006). 
LAW/ANALYSIS
I.  Timeliness of Response to Claim
Adams assigns error to the
 circuit court's conclusion that Respondents timely filed their Form 51 due to
 the additional five days allowed by Rule 6(e), SCRCP.[4] 
 Adams argues that Rule 6(e) does not apply to procedures under the Workers'
 Compensation Law.[5] 
 We agree.
Regulation 67-603.B(1) of the South
 Carolina Code (Supp. 2008) requires the employer's attorney to file the Form 51 with
 the Commission's Judicial Department within thirty days of service of the
 employee's Form 50.  Additionally, like Rule 6(a) of the South Carolina Rules
 of Civil Procedure, Regulation 67-209 of the South Carolina Code (1990) sets
 forth requirements for the computation of time in determining filing or service
 deadlines.  It provides:

 A. The day of the event, after
 which a designated period of time begins, is excluded. The last day, of the
 designated time period, is included.
B. Saturdays, Sundays, State, and Federal holidays are included unless the
 designated time period ends on a Saturday, Sunday, State, or Federal holiday in
 which case the next day that is not a Saturday, Sunday, State, or Federal
 holiday is included as the last day.

Regulation 67-209
 does not allow additional days to respond when a party has been served by
 mail.  Further, the only other workers' compensation regulation that allows an
 additional five days applies only in the instance when the Commission has
 served a party with an order using first class mail.  Regulation 67-213.A of the South Carolina Code (Supp. 2008) provides as
 follows:

 A.
 The Commission serves orders by certified mail, return receipt requested
 or by deposit in the United States Postal Service, first class postage,
 addressed to the parties according to R.67-210.
 .
 . .
 (2) When service is made by certified
 mail, the date of service is the date of the addressee's receipt indicated by
 the certified mail return receipt. When service is made by first class mail,
 five days are added to the date of mailing. Service by first class mail is
 deemed complete five days after the date of deposit in the United States Postal Service.   
 

(emphasis
 added).  
Because an additional
 five days to take action is expressly allowed by Regulation 67-213.A when the Commission serves an order by
 first class mail but not provided for in any other workers' compensation
 regulation, a five-day addition is clearly not allowed under any other
 circumstances in workers' compensation cases.  See 
Riverwoods, LLC v.
 County of Charleston,
 349 S.C. 378, 384, 563 S.E.2d 651, 655 (2002) (citing the rule of
 statutory construction that to express or include one
 thing implies the exclusion of another, or of the alternative); 
Scholtec v. Estate of Reeves, 327
 S.C. 551, 559, 490 S.E.2d 603, 607 (Ct. App. 1997) (referencing the
 legal maxim "expressio unius est exclusio alterius" as the
 long-standing rule of statutory construction that affirmative words imply a
 negative of that which is not affirmed); see
 also Scott v. State, 334 S.C. 248, 254-55, 513 S.E.2d 100, 104 (1999) (holding
 that the Legislature did not intend for a bond forfeiture to be the
 equivalent of a conviction under South Carolina Code Section 44-53-470 (1985) and
 noting that the Legislature presumably was aware that it had defined a
 conviction to include bond forfeitures in other statutes).  
Respondents argue
 that because the South Carolina Rules of Civil Procedure have been applied to
 proceedings before the Administrative Law Court, which, like the Commission, is
 governed by the Administrative Procedures Act, it is reasonable to conclude
 that these rules also apply to the Commission to the extent that they are not inconsistent
 with the Commission's regulations.  Respondents cite S.C. Code Ann. § 1-23-650 (Supp. 2008) in support of their proposition that the
 rules automatically apply to the ALC.  However, section 1-23-650 does not stand
 for this proposition.  Rather, this statute authorizes the ALC to establish its own rules of procedure "consistent with the rules of procedure
 governing civil actions in courts of common pleas[.]"  
The ALC's own rules
 determine whether it is appropriate to use the South Carolina Rules of Civil
 Procedure as a gap filler─their application to ALC proceedings is not
 automatic.  See ALC Rule 68 ("The South Carolina Rules of Civil Procedure and the South Carolina Appellate Court Rules may,
 where practicable, be applied in proceedings before the Court to resolve
 questions not addressed by these rules.")
 (emphasis added); see also Home Med. Sys., Inc. v. S.C. Dept. of
 Revenue, Op. No. 26638 (S.C.
 Sup. Ct. filed April 20, 2009) (Shearouse Adv. Sh. No. 17 at 25)  (holding
 that Rule 59(e), SCRCP, motions are permitted in ALC proceedings because
 the ALC rules specifically allow the Rules of Civil Procedure to apply to
 resolve questions not addressed by the ALC rules and because a Rule 59(e)
 motion is necessary for issue preservation in administrative proceedings when
 a party raises an issue or argument, but the ALC does not rule on it). 
In stark contrast, there
 is no provision in the workers' compensation regulations similar to ALC Rule 68, allowing for the South Carolina Rules of Civil Procedure to fill in any gaps.  In any
 event, the need for the additional five days under certain circumstances was
 obviously contemplated by the Commission when it drafted the workers'
 compensation regulations, as evidenced by 25A S.C. Code Ann. Regs. 67-213.A (Supp. 2008) (allowing an additional five days when
 the Commission serves an order by first class mail).  Therefore, there is no true "gap" in the regulations
 resulting in a need to refer to any other provision outside the workers'
 compensation regulations. 
Furthermore, the
 Commission's reference to the Rules of Civil Procedure in certain regulations
 but not in others indicates that in promulgating regulations, the Commission
 was aware of the wisdom of incorporating the Rules under those circumstances specifically
 identified by regulation rather than adopting the Rules as a general gap filler
 to be applied on an ad hoc basis.  See 25A S.C. Code Ann. Regs. 67-211
 (Supp. 2008) (allowing service of the claimant's hearing request pursuant to
 the South Carolina Rules of Civil Procedure if the hearing request is returned
 after mailing).  Notably absent from the workers' compensation regulations is a
 reference to Rule 6(e), SCRCP. 
Moreover, this Court must give
 deference to the Commission's interpretation of its own regulations in determining
 whether the Commission's decision was affected by an error of law.  See 
Earl v. HTH Assocs., Inc./Ace USA
 Ins. Co. of N. Am., 368 S.C. 76,
 81, 627 S.E.2d 760, 762 (Ct. App. 2006) (holding
 that the decision of an administrative agency interpreting its own regulations
 is given great deference); cf. Faile v. S.C. Employment Sec. Comm'n, 267 S.C. 536, 540, 230 S.E.2d
 219, 221-22 (1976) (holding that the construction
 of a statute by the agency charged with executing
 it is entitled to the most respectful consideration and should not be overruled
 without cogent reasons). 
 Additionally, workers' compensation regulations must be construed in favor of
 the employee in doubtful cases.  See 25A S.C. Code Ann. Regs. 67-201.B (1990)
 ("In doubtful cases, the application of these regulations shall be in
 favor of the injured employee."); Earl,
 368 S.C. at 80-81, 627 S.E.2d at 762 (holding that workers'
 compensation statutes and regulations are to be construed liberally in favor of coverage).[6] 
 Hence, the absence of any statute, regulation, or appellate opinion expressly
 allowing the application of Rule 6(e) to workers' compensation regulations
 compels the conclusion that the Appellate Panel did not
 commit an error of law in computing Respondents' filing deadline without regard
 to Rule 6(e), SCRCP.
Assuming, arguendo, that Rule 6(e), SCRCP, does apply to workers'
 compensation procedure, the circuit court incorrectly applied Rule 6(e) in computing
 the filing deadline for Respondents' Form 51.  The sole purpose of Rule 6(e) is
 to compensate for the time that the notice, or other paper requiring a
 response, is in the mail.  See Witzig v. Witzig, 325 S.C. 363, 366, 479 S.E.2d 297, 299 (Ct.
 App. 1996) (citing James F. Flanagan, South
 Carolina Civil Procedure 52 (2d ed. 1996)) (noting that the extra five
 days provided by Rule 6(e) compensates for the time the notice or other paper is
 in the mail).  Therefore, it is important to implement this purpose without
 granting more of a time extension than was intended by the drafters of Rule 6(e). 
 This can be accomplished by counting out the total of five days plus the number
 of the days in the prescribed periodhere, thirty-five consecutive dayswhile including
 intermediate weekend days and holidays in the computation.  See Rule
 6(a), SCRCP (providing that weekends and holidays are excluded only when
 they fall at the end of the prescribed period or when the prescribed period is
 less than seven days) (emphasis added).  However, allowing the addition of five
 days after separately computing the prescribed period, so that holidays
 and weekend days falling on day thirty are excluded from the computation, creates
 a windfall to the respondent that could not have been intended by the drafters
 of Rule 6(e).  This is what the circuit court did.  
The circuit court's application of Rule 6(e) allowed Respondents
 to exclude a weekend day on two separate occasions─both before and
 after adding the five days.  Given the explicit directions in Rule 6(a) for
 including or excluding certain days in the computation of deadlines, it is
 probable the rule would have explicitly directed the exclusion of weekend days both
 before and after adding the five days under subsection (e) if the drafters
 of the rule had intended such a result.  Cf. 
Four Video Slot Machines,
 317 S.C. at 400, 453 S.E.2d at 898 (holding that the meaning of general words in a statute may be restricted by words of
 specification which precede them on the theory that, had the legislature
 intended the general words be used in their unrestricted sense, there would
 have been no mention of the particular class). 
 All told, under the circuit court's computation, Respondents were allowed a
 total of thirty-nine days to respond, rather than thirty-five.  
Here,
 the due date for Respondents' Form 51 that would result from adding five days
 to the prescribed period would be Friday, October 8.  The thirty-five day
 period would begin on September 4 and would end on October 8, a weekday,
 because October 3, an intermediate weekend day, must be included in the
 computation.  See Rule 6(a), SCRCP (providing that weekends and holidays
 are excluded only when they fall at the end of the prescribed period or
 when the prescribed period is less than seven days) (emphasis added).  Again,
 Respondents did not file their Form 51 until October 12, 2004.  
Undoubtedly, Adams'
 delay in filing her claim was egregious.  Hence, it is not
 surprising that Respondents argue that the concept of fundamental fairness
 should allow the application of Rule 6(e), SCRCP.[7]  However, the Commission and the
 Legislature presumably took fairness into account when they clearly declined to
 incorporate Rule 6(e) into the Commission's regulations.  This Court must apply
 the law as it is written, and the strength of a defense on its merits certainly
 cannot justify manipulating the plain language of the law to salvage the
 defense when it is procedurally barred.  See 
Shelton v. Greenville County, 194 S.C. 506, 512, 10 S.E.2d 12, 14 (1940) ("[O]ur
 sole duty is to declare the law as it is written.").  
Based on the foregoing, the circuit court's conclusion that
 Respondents timely filed their Form 51 was incorrect.  Likewise, the circuit
 court's conclusion that the Appellate Panel's decision was affected by an error
 of law was improper.  Therefore, the circuit court should not have reversed the
 Appellate Panel's decision.  See S.C. Code Ann. § 1-23-380 (Supp. 2008) (providing
 that this Court may reverse an agency decision when the decision is affected by
 an error of law); Hamilton, 336 S.C. at 76, 518 S.E.2d at 600-01 (interpreting
 section 1-23-380). 
II.  Waiver
 of Affirmative Defenses
Adams also argues that Respondents waived their affirmative defenses, including the
 defenses of the statute of limitations and laches, because they failed to file
 their Form 51 within the period set forth in 25A S.C. Code Ann. Regs.
 67-603.B(1) (Supp. 2008).  We agree.
Regulation 67-603.C of the South Carolina Code (Supp. 2008)
 provides as follows:

 Failure
 to file a Form 51 or Form 53 within the period in section B(1) shall be deemed
 a general denial of liability for the benefits claimed and the employer and its
 representative by the failure to respond within the period in section B(1) shall
 forfeit each special and affirmative defense allowed by the Act including
 the defenses available in Sections 42-9-60, 42-15-20, 42-15-40, and 42-17-90 of
 the Act.

(emphasis
 added).
The words of a
 statute or regulation "must be given their plain and ordinary meaning
 without resort to subtle or forced construction to limit or expand its
 operation."  Sloan v. Greenville County, 356 S.C. 531,
 563, 590 S.E.2d 338, 355 (Ct. App. 2003).  The clear import of the
 language of Regulation 67-603.C is this:  "If
 you are late in filing a Form 51 or Form 53, the only defense you have left is
 a general denial of liability."  Therefore, Respondents' failure to timely
 file their Form 51 resulted in their forfeiture of all defenses, other than the
 general denial of liability, they would otherwise be allowed to assert in a
 workers' compensation proceeding.  This result is consistent with the longstanding
 view of our appellate courts that a defendant may waive the defense of the
 statute of limitations.  See Mende v. Conway Hosp., Inc., 304 S.C. 313,
 315, 404 S.E.2d 33, 34 (1991) (holding that waiver of the statute
 of limitations may result from any action or inaction
 manifestly inconsistent with an intention to insist on the statute).  
Respondents
 argue that even if their filing of Form 51 was not timely, their laches defense
 has not been forfeited under Regulation 67-603.C
 because the regulation's forfeiture provision only applies to "special and
 affirmative defenses allowed by the Workers' Compensation Act" and because
 the Act does not specifically mention this equitable defense.[8]  However,
 the unavoidable corollary of Respondents' argument is that the regulation's
 forfeiture provision does not apply to laches because it is not allowed by the
 Act.[9]  If the defense is not allowed under the Act, then that is the
 end of our inquiry and the defense is simply unavailable in a proceeding before
 the Commission.
Even assuming, arguendo, that the defense of laches is allowed by
 the Act, we arrive back where we startedall special and affirmative defenses
 allowed by the Act are waived by the employer pursuant to Regulation 67-603.C when the employer fails to
 timely file its Form 51.  
In sum, a special or affirmative defense is either allowed by the
 Act or not allowed by the Act.  To infer that any special or affirmative defense
 not mentioned in the Act is not allowed by the Act for purposes of the waiver
 provision of Regulation 67-603.C, yet allowed by the Act for all other purposes
 is analytically inconsistent and calls on this Court to supply additional terms
 to the Act's provisions, an action that is not within this Court's authority.  See 
State v. White,
 338 S.C. 56, 58, 525 S.E.2d 261, 263 (Ct. App. 1999) ("We,
 of course, must take the statute as we find it, giving effect to the
 legislative intent as expressed in its language. We cannot under our power of
 construction supply an omission in the  statute."); see also 
S.C. Farm Bureau Mut. Ins. Co. v. Mumford, 299
 S.C. 14, 19, 382 S.E.2d 11, 14 (Ct. App. 1989) (holding that once
 the Legislature has made a choice, there is no room for the courts to impose a
 different judgment based upon their own notions of public policy.).  
CONCLUSION
Accordingly, the circuit court's
 order is 
REVERSED AND
 REMANDED.
HUFF, J., concurs.
PIEPER, J.,
 dissents in a separate opinion.
PIEPER, J.,
 dissenting:
I respectfully dissent.  This
 case involves a workers compensation claim filed more than twenty years after
 the date of the accident.  Assuming, arguendo, the employer's Form 51 was
 untimely, I do not believe that the doctrine of laches would be waived as the
 waiver applies only to those special and affirmative defenses allowed by the
 Workers Compensation Act.  S.C. Code Ann. Regs. 67-603(C) (Supp. 2008). 
 Since the equitable doctrine of laches is not addressed by the Act, I would
 find that it has not been waived.
The issue of laches has been
 preserved by the respondents.  The single commissioner addressed laches as did
 the Commission, although the circuit judge declined to address the issue in
 light of her ruling in favor of the respondents.  Based upon a favorable lower
 court ruling, the respondents were not required to return to the circuit court
 and ask it to address all additional grounds that may sustain the decision,
 particularly in light of the fact that those arguments were raised and
 presented below.  See I'On, L.L.C. v. Town of Mt. Pleasant, 338
 S.C. 406, 420, 526 S.E.2d 716, 723 (2000).
Having determined the issue
 preserved for review, I would find error in the findings and conclusions of the
 Commission.  The single commissioner found the doctrine of laches applicable. 
 The Commission found a waiver of laches under its own regulations and, as an
 alternative, found the record only contained inadmissible evidence on the
 issue.  As noted above, I would conclude that the Commission erred as a matter
 of law in finding a waiver of laches under its regulations.  
Moreover, as to its alternative
 finding that the respondents had not presented any admissible evidence of
 laches, I would hold that finding clearly erroneous.  "Laches is an
 equitable doctrine defined as neglect for an unreasonable and unexplained
 length of time, under circumstances affording opportunity for diligence, to do
 what in law should have been done." Historic Charleston Holdings, LLC
 v. Mallon, 381 S.C. 417, 432, 673 S.E.2d 448, 456 (2009) (internal
 quotations omitted).  In order to establish laches, a party must show that the complaining
 party unreasonably delayed its assertion of a right, resulting in prejudice to
 the party asserting laches.  Id.  
In the case at bar, upon
 cross-examination, the respondents established that claimant did not have an
 excuse or explanation as to why she waited to file her claim.  Further, a
 review of the record indicates the lack of any form of objection to the manner
 in which counsel presented the additional elements of laches to the single
 commissioner; therefore, in the absence of any such objection, the single
 commissioner accepted the proffered evidence as to those elements. 
 Specifically, counsel indicated to the single commissioner that two witnesses
 could not be found and noted the difficulty in evaluating this claim over
 twenty years later.  Thus, I would hold the Commission committed an error of
 law and that its factual findings in support thereof to be clearly erroneous.
Finally, I do not agree with the
 possible rejection of the application of laches to a workers compensation
 proceeding, nor, on a similar note, would I accept the rejection of other
 equitable doctrines.  If the General Assembly had intended to omit the
 application of equitable doctrines in its statutory enactment, it would have
 done so.   Moreover, appellate jurisprudence in our state recognizes the
 doctrine of laches in workers' compensation cases.  See, e.g., Richey
 v. Dickenson, 359 S.C. 609, 612, 598 S.E.2d 307, 309 (Ct. App. 2004)
 ("This court has recognized the applicability of the doctrine of laches in
 a workers' compensation claim.") (citations omitted).  Consequently,
 equitable doctrines remain viable to address a situation where there is not an
 adequate remedy at law.  See Roger Young and Stephen Spitz, SuemSpitz's
 Ultimate Equitable Maxim: In Equity, Good Guys Should Win and Bad Guys Should
 Lose, 55 S.C. L. Rev 175, 188 (Fall 2003) (the notion that equity does not
 aid those who sleep on their rights is merely a summary of the well-known
 equitable doctrine of laches).
On appeal, we may consider any
 other sustaining grounds appearing in the record and may affirm on any of those
 grounds.  I'On, 338 S.C. at 420, 526 S.E.2d at 723-24 (holding an
 appellate court may affirm the lower court's judgment for any reason appearing
 in the record on appeal).  Accordingly, I would affirm the circuit court's
 dismissal of the case based upon the additional sustaining ground of laches. 
 Otherwise, because the single commissioner accepted the proffered information
 at the hearing without objection, I would, at a minimum, remand for full
 development of the record on the issue of laches since appellants claim for
 injuries has not been developed; the doctrine of laches should not be summarily
 rejected at the outset of this proceeding.  Quite simply, equity cannot act
 prematurely with a blind eye to all of the facts and circumstances that remain
 to be developed on this workers' compensation claim.

[1] Section
 42-15-40 provides that the right to compensation is barred unless a claim is
 filed with the Commission within two years after an accident.
[2] Regulation
 67-603.C states, 

 Failure to file a Form 51 or
 Form 53 within the period in section B(1) shall be deemed a general denial of
 liability for the benefits claimed and the employer and its representative by
 the failure to respond within the period in section B(1) shall forfeit each
 special and affirmative defense allowed by the Act including the defenses
 available in Sections 42-9-60, 42-15-20, 42-15-40, and 42-17-90 of the Act.

[3] The circuit court
 stated in its order that Wausau's Maitland office, the location where the
 Commission sent Adams' Form 50, does not handle Westinghouse SRS claims, but that Wausau handles Westinghouse SRS claims at its office in Wausau, Wisconsin.  The order further states that Respondents did not receive the Form 50 until October 11, 2004.  However, nothing in the record indicates that Respondents accused the
 Commission of using an invalid address to serve the Form 50 or that the circuit
 court so concluded.  Notably, the burden is on the insurance carrier to provide
 the Commission with the address for its authorized recipient of service.  See 25A S.C. Code Ann. Regs. 67-401 (1990) (requiring workers' compensation insurance carriers doing business in
 this State to designate one address as the authorized recipient of service,
 mail, documentation, requests, inquiries, and other demands concerning the
 employer or its insurance carrier and requiring the carrier to provide in
 writing the name, address, and telephone number of the authorized recipient to
 the Commission's Coverage and Compliance Department).
[4] Rule 6(e),
 SCRCP, states, 

 Whenever a party has the right or is
 required to do some act or take some proceedings within a prescribed period
 after the service of a notice or other paper upon him and the notice or paper
 is served upon him by mail or upon a person designated by statute to accept
 service, five days shall be added to the prescribed period.

[5] S.C. Code
 Ann. § 42-1-10 to -19-50 (1985 & Supp. 2008).
[6] In Wilkinson
 v. Palmetto State Transportation Co., 382 S.C. 295, 676
 S.E.2d 700 (2009), our Supreme Court stated that its members
 remain sensitive "to the general principle sanctioned by the
 Legislature that workers' compensation laws are to be construed liberally in
 favor of coverage."  Id. at 298, 676 S.E.2d at 702 (emphasis added).  The Court cautioned that the principle "does not
 go so far as to justify an analytical framework that preordains the result."  Id.  However, because the question before the Court did not involve
 the application of a regulation, it is doubtful the Court meant to address the
 mandatory language of Regulation 67-201.B.
[7] Respondents
 have not argued that they were denied proper notice or an opportunity to be
 heard.  
[8] By way of
 example, S.C. Code Ann. § 42-9-60 (Supp. 2008) provides for the
 defense of employee intoxication and S.C. Code Ann. § 42-17-90
 (Supp. 2008) allows for a review of an award on the ground of a change of
 condition.  
[9] We assume, as we must, that the term "allowed," as used
 in Regulation 67-603.C,
 takes on its customary meaning and thus is not as limited in scope as the terms
 "mentioned" or "addressed."  See 
S.C. Coastal
 Conservation League v. S.C. Dep't of Health & Envtl. Control, 380 S.C. 349, 367, 669 S.E.2d 899, 908 (Ct. App. 2008)
 ("If the General Assembly declined to define a term within the
 statute, the Court should construe the word in accordance with its usual and
 customary meaning.").